IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| APRIL NITKIN, <br><br> Plaintiff, <br><br> v. <br><br> MAIN LINE HEALTH d/b/a BRYN MAWR HOSPITAL, <br><br> Defendant. | CIVIL ACTION <br><br> NO. 20-4825-KSM |

## MEMORANDUM

MARSTON, J.                                                                                                               October 26, 2021

Plaintiff April Nitkin brings retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA") against Defendant Main Line Health ("MLH"), alleging that she was forced to resign from her position as a nurse practitioner on the palliative care team after she reported the then-Medical Director of the team, Dr. Karl Ahlswede, for making inappropriate comments of a sexual nature and fraudulent billing.[1]  MLH has filed two motions *in limine*.  For the reasons discussed below, MLH's motions are granted in part and denied in part.

Because we write only for the parties, we do not include a detailed recitation of the facts in this Memorandum.  A more thorough recitation of the facts is included in this Court's previous opinion on MLH's motion for summary judgment.  (*See* Doc. No. 41.)

---

[1] Nitkin also asserted hostile work environment claims under Title VII and the PHRA and a claim for wrongful termination under state law, all of which this Court dismissed when it granted in part MLH's motion for summary judgment.  (*See* Doc. Nos. 41–42.)  Therefore, only Nitkin's retaliation claim remains.

**I.      MLH's Motions** *in Limine*

MLH has filed two motions *in limine*.  First, it moves to exclude as hearsay Ahlswede's notes concerning the investigation into his alleged misconduct and text messages between Nitkin and her coworkers.  (Doc. No. 28.)  Second, it moves to exclude Catherine Lombardi, a former employee of MLH who did not work on the palliative care team, as a witness at trial.  (Doc. No. 38.)

We discuss each motion in turn.

**A.      Hearsay Motion**

*i.     Ahlswede's Notes*

MLH moves to preclude the introduction of Ahlswede's notes about his conversations with Eric Mendez (Director of Human Resources) and Dr. Barbara Wadsworth (Senior Vice President and Chief Nursing Officer) during the investigation into his alleged misconduct, arguing that they are hearsay and therefore must be excluded under Federal Rule of Evidence 801.  (Doc. No. 28.)  Nitkin responds that the notes are nonhearsay, pursuant to Federal Rule of Evidence 801(d)(2)(D), because Ahlswede created them within the scope of his employment.  (Doc. No. 29.)

Rule 801 defines hearsay as an out-of-court statement that a party offers into evidence to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  Such statements are inadmissible unless they fall within an exclusion to the hearsay rule under Federal Rule of Evidence 801(d) or an exception to the hearsay rule.  *See AAMCO Transmissions, Inc. v. Baker*, 591 F. Supp. 2d 788, 793 (E.D. Pa. 2008) ("An out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls into one of the enumerated hearsay exceptions found in Federal Rules of Evidence 803 and 804, satisfies the residual hearsay exception in Rule 807, or is

considered non-hearsay by Rule 801(d).").

Here, Nitkin argues that Ahlswede's notes are admissible because they fall within the party-opponent exclusion—i.e., they are not hearsay because they are statements made by MLH's "agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). In response, MLH contends that since responding to sexual harassment allegations has nothing to do with patient care or his medical services, Ahlswede did not make the notes in his capacity as Medical Director or as one of MLH's doctors, rendering the Rule 801(d)(2)(D) hearsay exclusion inapplicable. (*See* Doc. No. 28-1 at p. 3 ("Dr. Ahlswede's statements bear no relation to his role as a physician with Main Line.").) MLH also stresses the fact that Ahlswede was no longer the Medical Director at the time he sent the notes, August 2, 2019.[2]

Although a close call, we ultimately agree with Nitkin that the party-opponent exclusion applies. Nitkin alleges that Ahlswede made sexually inappropriate comments during palliative care team meetings—meetings which Ahlswede led in his capacity as Medical Director—and when discussing patient care. And Mendez's email to Ahlswede on April 18, 2019 to schedule a meeting to discuss Nitkin's allegations stated that Mendez wanted to discuss "management" issues and "concerns about the department," suggesting that the discussion fell within the purview of Ahlswede's role as Medical Director. (*See* Doc. No. 22-3, Ex. G at p. 102 ("I want to share some concerns that have been brought to my attention about the department and I was hoping to get your perspective and have you weigh in, particularly on the overall management of the department.").) Mendez's notes of the April 19 meeting also belie MLH's contention that the

---

[2] The Court notes that Ahlswede's notes purport to be from the time period beginning in April 2019, even if they were not typed up and sent until August. (*See, e.g.*, Doc. No. 28-5 at p. 4 ("Transcription of written notes-additional notes placed in parenthesis at time of transcription").)

3

conversations between Mendez and Ahlswede—which Ahlswede's notes purport to document—were not within the scope of Ahlswede's employment, in particular his role as a leader of the department. (*See, e.g.*, Doc. No. 22-3, Ex. I at p. 124 (noting that Ahlswede discussed his frustration with the "regulations that caused nurse practitioners to not be paid appropriately for their time spent with patients" but was "very adamant" that he "never asked . . . his staff to do anything unethical with billing practices" and that Mendez shared "that there was feedback from an un-named source about a toxic environment [within] the department").)

In *Black v. Southeastern Pennsylvania Transportation Authority*, the company moved to preclude the testimony of a SEPTA employee, Ms. Brister, who testified in her deposition that two other SEPTA employees—Ms. Dicks and Mr. Bazis—told her that they could not understand why the plaintiff was not selected for the Networking Services Specialist position. Civil Action No. 05-3411, 2006 WL 2850574, at *1 (E.D. Pa. Oct. 3, 2006). The court rejected the company's position that those statements arose in "casual conversation" and were not made within the scope of Dicks's and Bazis's employment. *Id.* In denying the motion *in limine*, the court reasoned that it was "clear that [Brister] spoke with the decisionmakers, during company time, at their place of business, about their opinions concerning the interviews" and that Bazis's position as supervisor of the NSS position was "exactly" why Brister and Bazis were even discussing the interviews in the first place. *Id.*

Likewise, here it appears that Mendez met with Ahlswede on company time, at their place of business, and about issues regarding the management of the department, including Nitkin's allegations that Ahlswede created a toxic work environment, encouraged fraudulent billing practices amongst the team, and spoke poorly of leaders at MLH. (*See, e.g.*, Doc. No. 22-3, Ex. I.) Ahlswede then purportedly recorded the notes after this (and other) conversations.

4

And nothing in the record indicates that Mendez was unwilling to receive follow up information from Ahlswede. To the contrary, Mendez's notes of their April 23, 2019 meeting indicate that he was receptive to Ahlswede's "request" to meet again to "revisit" their previous discussion (Doc. No. 22-3, Ex. I at p. 128), and on July 16, Mendez reached out to Ahlswede to update him about his recent discussions with "staff from the department" and "developments (*id.* at p. 122).

With this context in mind, the Court finds that Ahlswede's notes are statements of a party opponent and admissible.[3] Therefore, the Court denies MLH's motion *in limine* with respect to Ahlswede's notes.[4]

   ii. *Nitkin's Text Messages with Coworkers*

Next, MLH moves to preclude the introduction of text messages between Nitkin and her coworkers, arguing that they are also hearsay and subject to exclusion under Rule 801. (Doc. No. 28.) Nitkin counters that the text messages are not hearsay because they are not being offered for the truth of the matter asserted; rather, they will be used to show that Nitkin's colleagues supported her and to rebut MLH's contention that Nitkin's decision to discuss the investigation and Ahlswede's conduct with her coworkers created divisiveness within the team.

---

[3] The cases MLH cites in its motion *in limine* are inapposite. *See Nichols v. Bennett Detective & Protective Agency*, 245 F. App'x 224, 228 (3d Cir. 2007) (holding that the district court did not abuse its discretion in refusing to consider the declarant's out-of-court statements that a fellow employee was a racist and that that employee had stated that the plaintiff was incompetent, where the record showed that the declarant's job duties were "relatively limited" to the "task of keeping track of employee hours"); *Carter v. Mid-Atlantic Healthcare, LLC*, 228 F. Supp. 3d 495, 507–08 (E.D. Pa. 2017) (holding that a statement about "cutting salaries" was inadmissible hearsay because "a proponent of evidence under Rule 801(d)(2)(D) must first establish the identity of the declarant for admission under this Rule" and the plaintiff had failed to do so); *Mathis v. Monza*, Civil Action No. 11-450, 2013 WL 1058867, at *3 (W.D. Pa. Mar. 14, 2013) (finding that the two officers' statements about disparities between the male and female inmates was hearsay in part because "the only information which Plaintiff provided was that he overhead the conversation while the two officers were distributing the evening meals").

[4] The Court notes, however, that Nitkin must still authenticate the notes at trial, whether that be by a stipulation with the defense or by calling Ahlswede as a witness to authenticate the notes.

(Doc. No. 29.)

After a close a review of the text messages Nitkin intends to introduce into evidence, the Court finds that certain text messages could only be offered for the truth of the matter asserted and are therefore inadmissible hearsay.  By way of example:

- On June 19, 2019, Sandy O'Haire texted Nitkin, "Sorry you have not gotten the support you deserve." (Doc. No. 28-6 at p. 52.)

- That same morning, after Nitkin spoke with Adam Tyson, "Mackenzie H" texted Nitkin, "Seems wrong that he wasn't informed." (*Id.* at pp. 22–23.)

- On the afternoon of July 2, "Mackenzie H" texted Nitkin, "No you're getting punished for speaking out." (*Id.* at pp. 26–27.)

- Also on the afternoon of July 2, "Mackenzie H" texted Nitkin, "Maybe he just wants to look into it more before doing anything that would raise suspicion?  It's still not right, but I think Adam [Tyson] is a good guy.  I'm sure it's a relief not to have to go to bryn mawr but this isn't what you wanted either." (*Id.* at p. 28.)

- On July 21, 2019, "Mackenzie H" texted Nitkin, "Its [sic] not good.  It doesn't feel right that we can't even address the situation.  Jen said she called Barbara and told her how much she fucked this up, so I feel like she has our backs on this but she doesn't have enough power at the end of the day . . . I'm mostly upset that this all happened to you because I care about you and I'm going to miss working with you, but it is also very upsetting that this could've happened to any one of us and how do we feel like we're working in a safe environment again?" (*Id.* at p. 36.)

These text messages are clearly being offered for the truth of the matter asserted— namely, that Nitkin was not supported by the MLH administration, that Nitkin was punished for complaining about Ahlswede's alleged sexual harassment and fraudulent billing, that the actions Tyson took during and following the July 2 meeting were "not right," that Wadsworth "fucked up" in how she handled the investigation and aftermath, and that the working environment at MLH was not "safe" and actions were not taken to make the environment "safe" again.

In the alternative, even if the text messages were not technically offered for the truth of the matter asserted, in practice, they function at least in part to prove the truth of the matter asserted—namely, they imply that MLH erred in how it handled the investigation and its

aftermath and that MLH retaliated against Nitkin after she complained about Ahlswede.  *See United States v. Browne*, 834 F.3d 403, 416 (3d Cir. 2016) (holding that the district court erred in admitting a Facebook message chat at trial that was, in fact, inadmissible hearsay because "[n]otwithstanding the other reasons the Government may have sought to admit it, the record functioned at least in part to prove the truth of the matter asserted, that is, that Browne sexually assaulted J.B. and subsequently threatened her with video evidence of the assault"); *United States v. McGlory*, 968 F.2d 309, 332 (3d Cir. 1992) ("This Court . . . has disfavored the admission of statements which are not technically admitted for the truth of the matter asserted, whenever the matter asserted, without regard to its truth value, is guilty of the crime charged.  In *Reynolds*, we held that statements containing express assertions not offered for their truth may contain implied assertions that qualify as hearsay because the truth of the implied assertions is at issue and relevant to guilt.  We encounter this problem when: 'the matter which the declarant intends to assert is different from the matter to be proved, but the matter asserted, if true, is circumstantial evidence of the matter to be proved.'" (cleaned up)).

In contrast, the Court finds that other text messages are admissible because they are not being offered to show the truth of the matter asserted but instead are being offered to show that Nitkin was close with some of her coworkers and those colleagues supported her during her tenure at MLH and continued to do so after she resigned.  For example:

- On April 26, 2019, shortly after Nitkin's panic attack, Ann Peligrino [sic] texted Nitkin, "Take time to do something nice for yourself this weekend.  I am here if you need me." (Doc. No. 28-6 at p. 2.)

- On May 3, 2019, when Nitkin was out on medical leave following her panic attack, Sandy O'Haire texted Nitkin "Hope you are okay.  Got word you'll Be [sic] out next week Just know I'm thinking of you" and "If you ever need anything – I'm a friend." (*Id.* at p. 44.)

- On July 2, 2019, "Mackenzie H" texted Nitkin, "Hope you're doing something fun for your week off.  Going anywhere?" (*Id.* at p. 22.)

- On July 30, 2019, Shannon Bono and Nitkin made plans to have dinner on August 15, and Bono said, "Wahoo! It's a date." (*Id.* at pp. 63–64.)

- In September 2019, after Nitkin asked Jen Burke to complete a reference for her at Penn Medicine, Burke responded, "It's done…good luck!" (*Id.* at p. 18.)

Undoubtedly, Nitkin is not offering these messages to show that she was out of the office the second week in May, that "Mackenzie H" actually hoped she did something fun on her week off, that she and Bono had dinner on August 15, or that Burke in fact completed her reference for Penn. Rather, Nitkin offers them to show that she had friendly relationships with her coworkers; thus, they are not hearsay.

For these reasons, the Court grants in part and denies in part MLH's motion to exclude the text messages as hearsay.[5]

### B.     Catherine Lombardi

Last, MLH contends that Nitkin should be precluded from calling Catherine Lombardi as a witness at trial because Nitkin failed to identify her as a potential witness until October 15, 2021—just two weeks before trial. (Doc. No. 38.) Nitkin counters that she notified MLH as soon as she became aware that Lombardi had made a statement[6] to senior officials at MLH, and

---

[5] The Court emphasizes that the examples listed above are just that—*examples*. In other words, these are not exhaustive lists of all the texts that may be introduced or all the texts that will be excluded. Bearing the principles discussed above in mind, the parties shall meet and confer and come to an agreement as to which texts can be introduced at trial as nonhearsay.

[6] MLH notes that because Nitkin did not identify Lombardi's written statement as a trial exhibit, it does not separately move to preclude the statement itself but that its position is that the statement should be excluded. (*See* Doc. No. 38 at p. 2 n.1.) The Court agrees that the statement should be excluded. First, to the extent the statement could even be construed as relevant, it is more prejudicial than probative under Federal Rule of Evidence 403. *See* Fed. R. Evid. 403 ("The Court may exclude evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delayed, wasting time, or needlessly presenting cumulative evidence.").

In addition, much of Lombardi's written statement, as it relates to Nitkin, is not based on her firsthand knowledge and is therefore inadmissible under Federal Rule of Evidence 602. (*See, e.g.*, Doc. No. 38-4, Ex. D at p. 2("[D]isappointingly, the "Me Too" movement *was actually cited by MLH leadership in one*

8

that MLH would not be unduly prejudiced if Lombardi were permitted to testify as a witness. (Doc. No. 43.)

At the outset of a litigation, each party is required to disclose "the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). Parties are also required to supplement their initial disclosures to the extent that new individuals come to light. *See* Fed. R. Civ. P. 26(e)(1)(A) ("A Party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response in a timely manner if that party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process[.]"). Under Federal Rule of Civil Procedure 37, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether to sanction a party under Rule 37, courts consider: (1) the prejudice or surprise of the party against whom the excluded witness would testify; (2) the ability of that party to cure the prejudice; (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court's order. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000);

---

*of the depositions within April Nitkin's lawsuit* against Main Line Health as an excuse as to why the accused physician, who ultimately admitted to several of the accusations, was treated so delicately and why the investigation into the accusations was superficial at best." (emphasis added)); *id.* ("Since then, *through her lawsuit*, I have come to understand what information became available to various leaders and at what time and what the orchestrated response was, not through conjecture, *but rather through those leaders' own words, email communications and notes*, and I am left unequivocally disappointed and disgusted.").)

*Env't Equip. & Serv. Co. v. Wachovia Bank, N.A.*, 741 F. Supp. 2d 705, 722 (E.D. Pa. 2010) (citations omitted).

Here, the Court finds that Nitkin did not act in bad faith; she and her counsel became aware that Lombardi had met with MLH's senior staff on October 14, 2021 and notified defense counsel the very next day. In addition, allowing Lombardi to testify would not disrupt the trial in this case, and the Court finds that MLH would not be unfairly prejudiced.[7]

However, this does not mean that Lombardi has free reign to testify as to whatever topics she or Nitkin chooses. If, as MLH predicts, Lombardi plans on testifying as to what is in her written statement, she will be limited. Lombardi shall only be permitted to testify about *firsthand knowledge* she has regarding *Nitkin's* experience at MLH.[8] *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced to support a finding that the witness has personal knowledge of the matter."). Nitkin does not show how (or, even argue that) Lombardi's own experience at MLH and her interactions with the four unnamed executives referenced in her written statement are relevant, and the Court will not permit her to testify on those subjects.

Therefore, MLH's motion *in limine* to preclude Lombardi's from testifying as a witness at trial is denied, subject to the limitations referenced above.

---

[7] The Court is unpersuaded by MLH's contention that if Lombardi supported Nitkin for over a year before Nitkin complained to Human Resources—as Lombardi represents in her written statement—Nitkin must have known that she had relevant information and would be called upon to support her case. The same could be said for a large swath of people Nitkin encountered in that year.

[8] The Court questions how much firsthand knowledge Lombardi could have of Nitkin's situation on the palliative care team, given that Lombardi worked in an entirely different department. That said, the Court does not take so far of a leap as MLH, which argues that Lombardi has no firsthand knowledge whatsoever. That will be resolved when Lombardi is questioned at trial.

## II.     Conclusion

For the reasons discussed above, MLH's motions *in limine* are granted in part and denied in part.  An appropriate order follows.